UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

AAA BAIL YES BONDING AGENCIES, INC,
a Florida corporation.

      Plaintiff,

v.

A SIGNATURE ONLY BAIL BONDS INC., a
Florida corporation, GERALD W. LAING, an
individual, MARK T. DURKEE, an individual,
and JOHN DOES,

      Defendants. _____ /

## COMPLAINT

Plaintiff, AAA BAIL YES BONDING AGENCIES, INC. ("BAIL YES" or "Plaintiff")

files this Complaint against A SIGNATURE ONLY BAIL BONDS INC., a Florida

corporation, GERALD W. LAING, an individual, MARK T. DURKEE, an individual, and

JOHN DOES, (collectively, "Defendants"), and demands a trial by jury, and avers as

follows:

## NATURE OF ACTION

1.      This is an action for Cyberpiracy, Federal Trademark Infringement, False

Designation of Origin/Unfair Competition, Trademark Dilution, as well as for Florida

Trademark Dilution, Florida Unfair Deceptive And Unfair Trade Practices, and Common

Law Trademark Infringement and Unfair Competition. Plaintiff seeks monetary

damages, attorney fees, costs and permanent injunctive relief.

ROBBINS & REYNOLDS, P.A., SUITE 412, 9200 SOUTH DADELAND BOULEVARD, MIAMI, FLORIDA 33156 · (305) 670-8002

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction of this action pursuant to 15 U.S.C. § 1121 (Trademarks), 28 U.S.C. §§ 1331 (Federal Question) and 15 U.S.C. §1338 (acts of Congress relating to trademarks and unfair competition).  The Court has supplemental jurisdiction of the state law claim under 28 U.S.C. §1367.

3.    This Court has personal jurisdiction over the Defendants by virtue of their transacting, doing and soliciting business in this judicial District; the Defendants have their principal offices and/or reside in this judicial District, and because these Defendants continue to offer services that infringe and dilute the distinctive quality of Plaintiff's trademark in this judicial District.

4.    Further, the Defendants operate one or more web sites on the Internet from this judicial District that are accessible to residents of the State of Florida in connection with selling retail bail bonding services.

5.    The Defendants have committed tortuous acts in this judicial District which it knew or should have known would cause Plaintiff injury in the State of Florida.

6.    Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the named Defendants all reside in this judicial District, have conducted their tortuous business activities within this judicial District, and furthermore, a substantial part of the events giving rise to the causes of action occurred from and in this District.

## THE PARTIES

7.    Plaintiff, AAA BAIL YES BONDING AGENCIES, INC. is a Florida corporation that provides bail bond services to the general public using its trademark

Page 2 of 30

"BAIL YES" and its derivative mark "BAIL BONDS YES". The Plaintiff's principal place of business is located and headquartered in Miami, Florida.

8.     Plaintiff owns a United States Registration for the Trademark "BAIL YES".

9.     Upon information and belief, Defendant, A SIGNATURE ONLY BAIL BONDS INC., is an active Florida corporation, which has its business address in Fort Lauderdale, Broward County, Florida.    Upon information and belief, the officers and directors and/or owners or partners of said company are Defendants, GERALD W. LAING and MARK T. DURKEE.    Said Defendants are also licensed bail bond agents in the State of Florida.

10.    Upon information and belief, the Defendants herein are the alter ego of each other, in that there is a unity of interest and/or ownership between them.  Further, each of the Defendants exercise such dominion and control over the other that the separateness of identity ceases to exist.  Further, each Defendant has acted in concert with one another, and with the permission and consent of the other and/or each Defendant has aided and/or abetted the other and/or they are so inextricably intertwined and linked to one another, and/or the commonality between the Defendants is so great, that they cannot be readily distinguished. Inequity will result if the acts in question committed in Florida are treated as individual acts of particular Defendants alone.

11.    Moreover, upon information and belief, at all times herein mentioned, the Defendants, and each of them, were the agents and/or employees and servants and/or representatives of each of the other Defendants, and each of them, and were acting within the purpose, course and scope of said agency, service, employment or representation; and in doing the things herein alleged were acting with the knowledge,

permission and consent of the other Defendants.

12.    Upon information and belief, the separate acts and omissions of each of the Defendants, as set forth herein, were done intentionally and pursuant to a common plan and design to injure the Plaintiff. As a result of this civil conspiracy, each of the Defendants should be held separately liable and responsible for the entirety of the Plaintiff's damages.

13.    Upon information and belief, INTERNET OPERATIONS GROUP is an unknown and unregistered fictitious business entity in the State of Florida. This fictitious entity, however, was the initial registrant of record for the offending internet domain, BROWARDBAILYES.COM, with Defendant, MARK DURKEE, as the registered domain administrator. The fictitious entity and DURKEE each share the same address. Said entity also has the same address, or the next door address, of Defendant, A SIGNATURE ONLY BAIL BONDS. The current registrant of record for the domain "BROWARDBAILYES.COM" is the Defendant, A SIGNATURE ONLY BAIL BONDS, INC. with Defendant MARK DURKEE as the domain's administrator.

14.    Plaintiff is at this time without knowledge of the true names and capacities of the Defendants sued herein as "JOHN DOES". The Plaintiff shall hereafter seek leave of Court to amend this Complaint in order to allege the true names and capacities of said Defendants when ascertained. Upon information and belief, these unnamed "JOHN DOE" Defendants acted in concert with and/or were associated with the named Defendants, to the effect that the infringement of Plaintiff's trademark has extended to these unnamed JOHN DOES via the websites operated by the named Defendants, their sureties or other third parties.

## FACTS COMMON TO ALL COUNTS

### Plaintiff's Trademark

15. Since long before the acts of the Defendants complained of herein occurred, the Plaintiff has been engaged in the business of retail bail bonding services. On October 2, 2002, the Plaintiff acquired the exclusive right to use the trade names "BAIL YES" and "BAIL BONDS YES", and all variations thereof, including the domain name www.bailyes.com.

16. The aforementioned marks were used by the Plaintiff for the purpose of its business, which provided services to clients jailed by all law enforcement agencies and courts in Broward County, Florida, throughout the State of Florida and in several other states.

17. Since long prior to the acts of the Defendants as alleged herein, the Plaintiff's marks have been exhibited, used and displayed in interstate commerce to advertise, promote, identify and distinguish the Plaintiff's high quality of service. Accordingly, the Plaintiff's trade names have gained widespread recognition in the industry and among the consuming public.

18. For the past ten years, the Plaintiff has been the owner and operator of the www.bailyes.com website, and has continued to market its bail bonding services on the internet using the BAIL YES trade name. A true and correct copy of the "Who Is" report from GoDaddy Domains, and the assignment of trade names to the Plaintiff is attached hereto as **(composite Exhibit "A").**

19. On May 24, 2003, Plaintiff registered the domain name www.bailbondsyes.com, a variant and derivative of the BAIL YES mark, as an

Page 5 of 30

additional trade name and means for the public and clients to access the Plaintiff's website at www.bailyes.com. A true and correct copy of the "Who Is" report from GoDaddy Domains is attached hereto as **Exhibit "B"**. Plaintiff owns and has continued to operate and use the bailbondsyes.com domain website.

20.     Plaintiff's domain names, bailyes.com, and bailbondsyes.com go directly to the homepage of the BAIL YES website.  A true and correct copy of the homepage of the BAIL YES web site is attached hereto as **Exhibit "C"**.  Long before the Defendants' unlawful acts as alleged herein, the Plaintiff has used these domain names to advertise and promote its services and good name in the bail bonding industry and to direct the consuming public to its website.

21.     On January 17, 2006, the United States Patent and Trademark Office issued a trademark registration to the Plaintiff for the Trademark "BAIL YES".

22.     BAIL YES is registered with the U.S.P.T.O. as Registration No. 3,044,117 under the international classification of 036 for nationwide retail bail bonding services. A true and correct copy of the registration is attached hereto as composite **Exhibit "D."** The Plaintiff is the sole owner of the BAIL YES federal trademark. This federal trademark has not been abandoned, canceled or revoked.

23.     Plaintiff has maintained in force and has continuously used the federally registered trademark in commerce for more than seven years in connection with its bail bonding business.

24.     The Plaintiff's trademark registration has become incontestable under 15 U.S.C. § 1065, establishing conclusive evidence as to the validity of the registered mark, of Plaintiff's ownership of said mark, and of Plaintiff's exclusive right to use said

registered mark in commerce.   The Plaintiff's website at www.bailyes.com clearly indicates therein that the name "BAIL YES" is a registered trademark, which is further detailed on the site's "Terms of Use." A true and correct copy of same, along with proof of the mark's incontestability, is attached hereto as composite **Exhibit "E."**

25.      Pursuant to 15 U.S.C. § 1072, the Plaintiff's incontestable federal trademark registration served as constructive notice to the Defendants of the Plaintiff's exclusive rights in and to its trademark.

26.      The Plaintiff has expended substantial effort and money in advertising and promoting the "BAIL YES" mark and its derivative mark "BAIL BONDS YES", with its online web sites and associated phone numbers 800-BAIL-YES and 888-BAIL-YES. In fact, due to the superior quality, size and scope of its website, the BAIL YES site has earned a high organic placement on search engines like Google.

27.      As a further result of the extensive use and promotion by the Plaintiff of its trademark, the Plaintiff has earned valuable goodwill which is symbolized by its name and its mark. Members of the consuming public have come to readily identify the BAIL YES mark as being associated with a high quality of service.   Over time, Plaintiff has attained a national reputation amongst its clientele, the courts and the law enforcement agencies which it services.   The extensive advertising and promotion of Plaintiff's mark has increased its saleability and public acceptance, and has acquired fame in the retail bail bonding service business. Accordingly, Plaintiff's trademark has achieved secondary meaning as the identifier of Plaintiff's high-quality bail bonding services.

28.      On April 26, 2012, the United States District Court for the Southern District of Florida entered an Order recognizing that the Plaintiff is the owner of the trademark

Page 7 of 30

"BAIL YES" and of the derivative mark "BAIL BONDS YES", and that it has used that trademark in the stream of commerce since 2002.  The District Court entered a permanent injunction in that case against the defendant's therein, prohibiting such parties from, among other things, using any similar variations of the Plaintiff's trade name, either alone or in combination with any other letters, letter strings, phrases or designs in commerce, or on any internet sites, social media or in connection with any business name, including advertising and email addresses.  A copy of said Order Granting Permanent Injunction in favor of the Plaintiff is attached hereto as **Exhibit "F"**.

### Defendants' Unauthorized, Illegal and Infringing Activities

29.     At all relevant times hereto, the Defendants in this action have each had constructive and actual knowledge of Plaintiff's trademark, including its exclusive right to use and license its trademark and the goodwill associated therewith.  Further, prior to the unlawful acts in question, the Defendants were each aware of the Plaintiff's domain website URL address, www.bailyes.com, and knew that the Plaintiff regularly used the BAIL YES mark in commerce.

30.     Despite their aforesaid knowledge of the Plaintiff's mark, the Defendants, and each of them, in violation of the Plaintiff's exclusive rights to the BAIL YES mark, have engaged in an extensive, deliberate, and illegal campaign to deceive the public, by simulating and imitating the Plaintiff's mark, by illegally piggybacking upon Plaintiff's good-name and reputation, mistakenly believing that they could flout the law with impunity.

31.     Specifically, Defendants have created, by design, the domain name "www.BrowardBailYes.com" (adding the county name BROWARD in front of the word

the words "BAIL YES"). Such name incorporates Plaintiff's trademark and is confusingly similar to the Plaintiff's protected mark.  It is also confusingly similar to the Plaintiff's domain names "www.bailyes.com" and "www.bailbondsyes.com".

32.    Both the Plaintiff and the Defendants are engaged in the retail bail bonding business in Florida.   The Defendants are intentionally and in bad faith improperly utilizing and appropriating the Plaintiff's mark in an effort to divert internet traffic away from the Plaintiff over to the Defendants' website and internet and print advertisements.

33.    When a user types the Defendants' infringing domain name into a web browser, the user is routed directly to the Defendants' website.  A true and correct copy of the screen prints showing that www.BrowardBailYes.com resolves to the Defendants' home page of A SIGNATURE ONLY BAIL BONDS is attached hereto as **(Exhibit "G" ).**

34.    Also, when a member of the public performs a web search, such as on MSN/Bing and Yahoo, using the Plaintiff's corporate name, such as "AAA Bail Yes Bonding Agencies in Fort Lauderdale", or "in Broward County," the Defendants' website prominently appears in the advertised and non-advertised organic listings, effectively redirecting internet traffic to the Defendants and diluting the Plaintiff's mark.  Similarly, by typing in a search of the key words "Bail Yes in Fort Lauderdale, FL," or "Bail Bonds Yes in Ft. Lauderdale, FL," the search result listings will include one or more results which lead directly to the Defendants' domain name and website.   True and correct copies of the MSN/BING and Yahoo screen prints for the searches indicated above are attached hereto as **(composite Exhibit "H")** .

35.    Moreover, Defendants have launched several search engine advertising

campaigns, such as on Google adwords, MSN/Bing, Yahoo, and Yahoo Local online ads displaying the infringing domain name, www.BrowardBailYes.com, which links directly to the Defendants' A SIGNATURE ONLY BAIL BONDS website. A true and correct copy of same is attached hereto as (composite Exhibit "I").

36. Defendants have also created a variety of "A SIGNATURE ONLY BAIL BONDS" online yellow page advertising campaigns utilizing and displaying the infringing domain name "www.BrowardBailYes.com" in the ad itself, which directly links to the Defendants' website as aforesaid. A true and correct copy of same is attached hereto as (composite Exhibit "J").

37. Plaintiff further discovered that the Defendants are using the "BROWARD BAIL YES" domain on other third party websites. For example, the Defendants advertised their services using the "www.browardbailyes.com" domain name on Internet directories, such as "AOL" "DomainTools.com", and "Godaddy.com", and more recently on "JustDial.com", "TrafficSchools123.com", "ArrestedInBrowardCounty.com", and "BrowardBail.Wordpress.com". A true and correct copy of same is attached hereto as (composite Exhibit "K"). The domain link advertised on these other sites leads directly to the A SIGNATURE ONLY BAIL BONDS website. The continued use to this day of the Plaintiff's federally registered mark "BAIL YES" as contained within the Defendants' unauthorized domain name, frustrates, dilutes, and disrupts the Plaintiff's business, and seeks to capitalize on the Plaintiff's goodwill and reputation for commercial gain.

38. Further, the Defendants have effectively induced others to infringe on the Plaintiff's trademark by placing and/or allowing their unauthorized domain name to

appear on other sites, accounts and directories as noted in the foregoing paragraphs.

39.     It is clear by their actions that the Defendants' infringing domain name was purposely configured and designed by the Defendants to mislead consumers and to divert them away from the Plaintiff's website to their own website.

40.     Further, the use of Plaintiff's mark by the Defendants improperly suggests to the public that there exists an affiliation or license between the Plaintiff and the Defendants. In using the infringing mark, the Defendants have thereby diluted the distinctiveness of the Plaintiff's mark, have misled and confused actual and potential consumers in the market for bail bonding services, and have damaged the Plaintiff by the loss of business.

41.     Defendants' simulation and use of the Plaintiff's trademark was done without Plaintiff's consent or authorization. Nor have the Defendants obtained a license from the Plaintiff to use or simulate Plaintiff's marks to solicit business.

42.     The Defendants have no trademarks or other intellectual property, and did not have reasonable grounds to believe that the use of the infringing domain name was a fair use or otherwise lawful.

43.     The Defendants have directed the infringing domain name to the same clientele as Plaintiff's customers, in the same streams of commerce, and in the same areas as where the Plaintiff offers its bonding services.

44.     The Defendants collectively are the owners and/or operators of the infringing domain name "www.BrowardBailYes.com". Said infringing domain was set up on behalf of the Defendants through AT&T Advertising Solutions as part of the Defendants' yellow pages advertising account. The Defendant, MARK DURKEE, is listed as the domain's administrative contact as of January 25, 2008. (The

administrative contact has the highest level of control over a domain, including the ability to transfer a domain to a third party). The domain name registrar for the infringing domain is Tucows, Inc. A true and correct copy of same is attached hereto as (**Composite Exhibit "L"**).

45.    In using AT&T Advertising Solutions, the Defendants were required to abide by the terms of the AT&T Domain Registration Agreement when they subscribed to have AT&T Advertising Solutions register their domain name.  The AT&T Domain Name Registration Agreement regarding the selection of a domain name plainly indicates that AT&T does not check to see whether the domain name to which the subscriber selects infringes on the legal rights of others, and urges the subscriber (the Defendants) to investigate and to obtain the advice of their counsel in this regard. Clearly, the Defendants failed or refused to do so, in that they purchased yellow page internet and print advertising, and authorized the registration of the aforementioned domain name with AT&T Advertising Solutions, notwithstanding their infringement upon the Plaintiff's trademark rights.

46.    AT&T merely delivered to the domain registrar, Tucows, Inc., the chosen domain name selection that the subscriber (the Defendants herein) provided. Under the AT&T Domain Name Registration Agreement, the Defendants are obligated to defend, indemnify and hold AT&T and its registrar harmless from all claims arising from a trademark infringement action.  Thus, the Defendants are legally liable to the Plaintiff for their trademark infringement, notwithstanding that their use of the infringing domain name was through AT&T Advertising Solutions.

47.    Subsequently, upon information and belief, after Plaintiff's notification to

AT&T of the Defendants' trademark infringement, said AT&T advertising entity or the successor thereto (YP, Inc.) ended its business relationship with A SIGNATURE ONLY BAIL BONDS.

### Defendants' Defiant Even After Being Placed On Notice To Cease And Desist

48.    On December 7th, 2011, prior to the filing of this lawsuit, the Plaintiff sent written notification to the Defendant, A SIGNATURE ONLY BAIL BONDS, and also to the Defendant, MARK T. DURKEE, that they were infringing upon the Plaintiff's trademark, and demanding that they cease doing so within seven (7) days.  However, these Defendants ignored the Plaintiff, and have continued its infringing activities as aforesaid.  A true and correct copy of said letters are attached hereto as **Composite Exhibit "M.**

49. On January 5th, 2012, Plaintiff sent a second letter to each of these Defendants, once again demanding that they cease and desist their infringing activities upon the Plaintiff's mark.  A true and correct copy of same is attached hereto as **Composite Exhibit "N"**.

50.    On January 6th, 2012, Plaintiff received a faxed response from Defendant, GERALD LAING, the President of A SIGNATURE ONLY BAIL BONDS, which stated, in part, as follows:

> "We categorical reject your assertions that we are somehow in any way causing infringement, dilution or confusion regarding your business, related businesses or business models."

Said Defendant also specifically refuted the Plaintiff's incontestable trademark.  A true

and correct copy of Defendant's response is attached hereto as **Exhibit "O"**.

51.    Because the Defendants continued to ignore and violate Plaintiff's trademark rights, despite being repeatedly advised that doing so constituted an illegal infringement of Plaintiff's trademark, counsel for the Plaintiff on June 14, 2012 sent a third cease and desist letter to Defendant, A SIGNATURE ONLY BAIL BONDS, demanding again that said Defendant immediately cease and desist using the name "BROWARDBAILYES.COM", and further demanding that it transfer the infringing domain to the Plaintiff.  A true and correct copy of same is attached hereto as **Exhibit "P"** .

52.    On June 15th, 2012 Plaintiff's counsel received a response from the Defendant, through President GERALD LAING calling the Plaintiff's position "spurious" and "bull crap".  A true and correct copy of same is attached hereto as **Exhibit "Q"** .

53.    On August 1, 2012, Plaintiff's counsel sent one final letter to the Defendant, A SIGNATURE ONLY BAIL BONDS, demanding that said Defendant immediately cease its infringing activities, including its advertising on sites other than those sponsored by AT&T, such as on Google, Yahoo and Bing, and that it also execute a transfer assignment of the infringing domain name over to the Plaintiff.  A true and correct copy of same, along with the enclosed assignment form, is attached as Composite **Exhibit "R".**  The Defendant totally ignored said correspondence and continued its infringement activities as previously described in total and willful disregard of the Plaintiff's trademark rights.

54.    Further, even after AT&T's successor, YP, Inc., also informed the Defendant, A SIGNATURE ONLY BAIL BONDS, of the Plaintiff's infringement claim,

ROBBINS & REYNOLDS, P.A., SUITE 412, 9200 SOUTH DADELAND BOULEVARD, MIAMI, FLORIDA 33156 · (305) 670-8002

resulting in the termination of YP's business relationship with said Defendant, the Defendants have nonetheless continued to blatantly infringe on Plaintiff's trademark rights as aforesaid.

55.     Although Defendants, LAING and DURKEE are officers, directors and shareholders of A SIGNATURE ONLY BAIL BONDS, they are nonetheless individually liable to the Plaintiff for the acts alleged herein because they are also both bond agents in the State of Florida, and governed by Florida law which expressly prohibits bail bond agents from engaging in the type of activity complained of herein.   Further, both individual Defendants had direct control over the objectionable practices and knowledge of or awareness of the conduct complained of by the Plaintiff herein.   Both Defendants directly participated in the infringement, and refused to stop the infringement even after notice to them by the Plaintiff that their advertising activities and use of said domain name infringed the Plaintiff's trademark rights.   Each of these individual Defendants directed, controlled, ratified, and were the moving forces behind the infringing activity described above.

56.     Without a permanent injunction by this Court, the Defendants clearly intend to continue marketing their identical services to the exact same customer base as that of the Plaintiff utilizing their infringing domain name.

57.     These acts by the Defendants as aforesaid constitute direct, vicarious and/or contributory infringement of the Plaintiff's trademark rights in violation of 15 .S.C. §1114(1).

58.     Plaintiff has no adequate remedy at law.

ROBBINS & REYNOLDS, P.A., SUITE 412, 9200 SOUTH DADELAND BOULEVARD, MIAMI, FLORIDA 33156 · (305) 670-8002

59.     Plaintiff is suffering irreparable injury and has suffered substantial monetary damages as a direct and proximate result of Defendants' counterfeiting and infringing activities.

## Defendants Actions and Continued Infringement, Despite Notice, Shows Willful And Bad Faith Conduct

60.     The Defendants aforementioned conduct constitutes the most egregious and damaging form of trademark infringement because it is being done purposely and intentionally, even after being informed of their violation. The Plaintiff's trademark, having become incontestable under 15 U.S.C. § 1065, serves as prima facie evidence of notice to the Defendants, and further the Defendants have received multiple direct notices of their illegal trademark infringement from the Plaintiff, as well as demands that it cease and desist from such conduct.  In spite of same, acting in bad faith, with impunity, and with a reckless disregard or willful blindness to the rights of the Plaintiff, the Defendants have aided and abetted each other in the continuation and consummation of the unlawful scheme, knowing the unlawfulness of their acts.

61.     Moreover, Defendants' infringing activities described above demonstrate a willful pattern of unlawful behavior specifically designed and intended to confuse, mislead and deliberately deceive retail bail consumers, the public and the trade who have no idea they are being duped and misled.  Defendants know that its wrongful conduct is likely to create a false impression, and will trick or deceive customers, the public, and the trade into believing there is a connection or association that exists between Plaintiff and the Defendants.  Defendants have incorporated the "BAIL YES"

mark in their domain name with the clear intent to trade upon the Plaintiff's name and goodwill. Plaintiff has thus been damaged by Defendants illegal actions both in revenue and in reputation.

62.     The intentional, deliberate and willful nature of the acts of the Defendants make this an exceptional case under 15 U.S.C.§1117 (a). Plaintiff is entitled to recover attorney fees in exceptional cases, such as the case at bar.

63.     Plaintiff has retained the undersigned counsel to represent it in this matter and is obligated to pay a reasonable attorneys fee for such representation.

### COUNT I

### CYBERPIRACY PREVENTION UNDER THE ANTI-CYBERSQUATTING
### CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d))

64.     Plaintiff realleges and incorporates by reference the matters alleged in all of the foregoing paragraphs of this Complaint as if fully set forth herein.

65.     Defendants' bad-faith intent to profit from the use of the Plaintiff's trademark by directing traffic to Defendants' website(s) constitutes cyber piracy under 15 U.S.C. § 1125(d).

66.     Defendants' have engaged in a form of cyber piracy by registering a domain name intentionally designed and configured to include the Plaintiff's trademark. In doing so, the Defendants are capitalizing on the Plaintiff's goodwill in a concerted effort to divert traffic to the Defendants website.

67.     Defendants' cyber piracy of the Plaintiff's trademark has caused and will

continue to cause unquantifiable monetary damage to the Plaintiff, and is causing irreparable harm to the Plaintiff's business, and impairing the value of its name, reputation and goodwill, for which there is not an adequate remedy at law.

68.    Defendants are directly, contributory, or vicariously liable for these actions. Plaintiff will continue to be irreparably injured and damaged by Defendants' cyber piracy of Plaintiff's trademark rights, unless permanently enjoined from doing so by the Court.

## COUNT II

### TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

69.    Plaintiff realleges and incorporates by reference the matters alleged in all of the foregoing paragraphs of this Complaint as if fully set forth herein.

70.    This action is for trademark counterfeiting and infringement against the Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of bail bond services in commerce while using and trafficking in Plaintiff's trademark and/or derivative mark.

71.    The Defendants are selling the identical services as Plaintiff, to the same clientele that the Plaintiff services, through the same streams of commerce that Plaintiff utilizes, and are knowingly using a name in commerce that is confusingly similar to the Plaintiff's tradename, including its federally registered trademark, which the Plaintiff owns and continues to use in Florida.

72.    Defendants' unauthorized and unlicensed use in commerce of Plaintiff's trademark, constitutes a reproduction, copying, counterfeiting and colorable imitation of

the Plaintiff's mark in a manner that is likely to cause and/or is actually causing confusion, mistake, and deception among members of the trade and of the general consuming public with respect to the origin and source of Defendants' bonding services.

73.     The use by the Defendants of the Plaintiff's trademark in its advertising has been conducted in such a deceptive and confusing manner so as to cause consumers to falsely believe that there is a connection, affiliation, or association with the Plaintiff, or that the Plaintiff has sponsored, endorsed or approves of Defendants' commercial services and promotional activities.

74.     The Defendants committed their wrongful acts with the intent to mislead and misdirect consumers.

75.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable monetary damages to Plaintiff and is causing irreparable harm to its business, and impairing the value of its name, reputation and goodwill, for which there is not an adequate remedy at law.

76.     The foregoing acts by the Defendants constitute direct, vicarious, and/or contributory infringement of Plaintiff's trademark rights in violation of 15 U.S.C. § 1114(1).

77.     That the intentional and deliberate nature of the acts of the Defendants make this an exceptional case under 15 U.S.C. 1117(a), entitling the Plaintiff to attorney fees.   Plaintiff will continue to be irreparably injured and damaged by Defendants' infringement of Plaintiff's trademark rights, unless permanently enjoined by the Court.

ROBBINS & REYNOLDS, P.A., SUITE 412, 9200 SOUTH DADELAND BOULEVARD, MIAMI, FLORIDA 33156 · (305) 670-8002

## COUNT III

## FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION (15 U.S.C. § 1125(a)

78.    Plaintiff realleges and incorporates by reference the matters alleged in all of the foregoing paragraphs of this Complaint as if fully set forth herein.

79.    Defendants' unauthorized use in commerce of the Plaintiff's trademark in connection with their solicitation, advertising and promotion of their bail bond services constitutes a false designation of origin and/or a false or misleading description or representation of fact, which is likely to cause confusion or mistake in the minds of the public as to the origin of said services. Such unauthorized use by the Defendants of the Plaintiff's mark is further likely to deceive the public as to the affiliation, connection or association with the Plaintiff, or as to the sponsorship or approval by the Plaintiff of the Defendants' bonding services or commercial activities, in violation of 15 U.S.C. §1125 (a).

80.    The aforementioned acts of the Defendants further constitute unfair competition, in violation of 15 U.S.C. §1125 (a). These acts have and will likely continue to deceive retail bail bond consumers into falsely believing that the Defendants are somehow affiliated or associated with the Plaintiff, or sponsored by the Plaintiff. Through their marketing campaign, the Defendants have and will likely continue to deceive and influence the purchasing decisions of prospective customers of the Plaintiff, resulting in a diversion of retail bond sales away from the Plaintiff, and instead going directly to the Defendants.

81.    Defendants' use in commerce of a name or domain name which is

Page 20 of 30

confusingly similar to Plaintiff's trademark with the knowledge that Plaintiff owns, has used, and continues to use said mark, constitutes intentional conduct by the Defendants to make false designations or representations of origin to the consuming public about the services of the Defendant, and is designed to unfairly compete against the Plaintiff in willful and conscious disregard of Plaintiff's rights to its trademark.

82.     As a result of their direct, vicarious and/or contributory acts as aforesaid, the Defendants have been and/or will be unjustly enriched by profits that they have made in connection with their infringing and counterfeiting activities.

83.     Defendants' unlawful acts have caused and are continuing to cause unquantifiable monetary damages to the Plaintiff and is causing harm to its business, and impairing the value of its name, reputation and goodwill, for which there is no adequate remedy at law.

84.     Absent an entry of a permanent injunction by this Court, Plaintiff will continue to be irreparably injured and damaged by the Defendants.

**COUNT IV**

**TRADEMARK DILUTION (15 U.S.C. §1125 (c))**

85.     Plaintiff realleges and incorporates by reference the matters alleged in all of the foregoing paragraphs of this Complaint as if fully set forth herein.

86.     The Plaintiff's trademark has been advertised and used extensively for at least ten years, both in Florida and throughout the United States.

87.     As a result thereof, the Plaintiff's trademark has acquired a high degree of

ROBBINS & REYNOLDS, P.A., SUITE 412, 9200 SOUTH DADELAND BOULEVARD, MIAMI, FLORIDA 33156 · (305) 670-8002

distinctiveness, and is highly recognizable by the trade and the consuming public.

88.    Defendants are engaged in the commercial use of the Plaintiff's trademark in commerce, with the intent of trading on Plaintiff's reputation and goodwill through the use of said mark.

89.    Defendants' aforesaid unauthorized uses, counterfeiting, infringing activities and form of advertising dilute, diminish, tarnish, lessen and detract from the distinctive quality and value of the Plaintiff's trademark, with consequent damage to the Plaintiff, and the business and goodwill symbolized by the Plaintiff's trademark, all in violation of 15 U.S.C. §1125 (c).

90.    As a result of their direct, vicarious and/or contributory acts as aforesaid, the Defendants have been unjustly enriched by the profits that they have made in connection with their willful trademark dilution of the Plaintiff's mark.

91.    Defendants' unlawful acts have caused and are continuing to cause unquantifiable monetary damages to the Plaintiff and harm to its business, and impairing its name, reputation and goodwill, for which there is no adequate remedy at law.

92.    Absent an entry of permanent injunction by this Court, Plaintiff will continue to be irreparably injured and damaged by the Defendants.

### COUNT V

### STATE TRADEMARK DILUTION (Fla. Stat. §495.151)

93.    Plaintiff realleges and incorporate by reference the matters alleged in the

foregoing paragraphs of this Complaint as if fully set forth hereunder.

94.     Defendants' unauthorized use of the Plaintiff's trademark has blurred, tarnished and diluted and continues to blur, tarnish and dilute the distinctive quality of its protected mark by lessening the capacity of Plaintiff's trademark to identify and distinguish its individual services, and by causing confusion and deception amongst the Plaintiff's market, in violation of Florida Statute §495.151.

95.     As a result of their direct, vicarious and/or contributory acts as aforesaid, the Defendants have been unjustly enriched by profits that they have made in connection with their willful trademark dilution of the Plaintiff's protected mark.

96.     Defendants' unlawful acts have caused and are continuing to cause unquantifiable monetary damages to the Plaintiff and harm to its business, and impairing its name, reputation and goodwill, for which there is no adequate remedy at law.

97.     Absent an entry of permanent injunction by this Court, Plaintiff will continue to be irreparably injured and damaged by the Defendants.


## COUNT VI

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES

### (Fla. Stat. §501.211 (1) and (2), §501.204, §626.9541(b), §648.44(6)(e)(2))


98.     Plaintiff realleges and incorporates by reference the matters alleged in the foregoing paragraphs of this Complaint as if fully set forth herein.

99.     The Plaintiff seeks to have this Court declare, pursuant to Florida Statute

501.211(1), that the aforementioned acts of the Defendants in the conduct of their business by unlawfully trading on the Plaintiff's name, reputation and goodwill, and by diluting and infringing on the Plaintiff's trademark in this State, constitute unfair and/or deceptive acts or practices and unfair methods of competition.

100.    Further, Defendants' actions as aforesaid violate Florida Statute 648.44(6)(b), which prohibits a bail bond agent from misleading advertising or deceptive trade practices, and also violates Florida Statute 648.44(6)(e)(2), which prohibits bail bond agents from advertising under names that are misleading or deceptive.

101.    Florida Statute 626.9541(b) specifically prohibits the type of activity in which the Defendants have been engaged in as alleged herein, which involves the knowing publication, dissemination, circulation and/or placement before the public of misleading and deceptive advertising with respect to the business of insurance, of which bail bonding is an integral part.

102.    The Defendants have willfully and knowingly committed these unfair methods of competition and unfair or deceptive acts or practices in the conduct of their business as aforesaid, in direct violation of Florida Statutes §501.204, §648.44 and §626.9541.

103.    As a result of their direct, vicarious and/or contributory acts as aforesaid, the Defendants have been and/or will be unjustly enriched by profits that they have made in connection with their infringing and counterfeiting activities.

104.    Defendants' unlawful acts have caused and are continuing to cause unquantifiable monetary damages to the Plaintiff and harm to its business, and impairing its name, reputation and goodwill, for which there is no adequate remedy at

ROBBINS & REYNOLDS, P.A., SUITE 412, 9200 SOUTH DADELAND BOULEVARD, MIAMI, FLORIDA 33156 · (305) 670-8002

law.

105.    Absent an entry of a permanent injunction by this Court, Plaintiff will continue to be irreparable injured and damaged by the Defendants.

106.    Plaintiff is furthermore entitled to recover actual damages, attorneys fees and costs pursuant to Florida Statute 501.211(2).

**COUNT VII**

**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

**UNDER FLORIDA COMMON LAW**

107.    Plaintiff realleges and incorporates by reference the matters alleged in the foregoing paragraphs of this Complaint as if fully set forth herein.

108.    The Defendants infringement of the Plaintiff's trademark and use of a confusingly similar mark in connection with the identical services that are offered by Plaintiff falsely suggests that Plaintiff and Defendants are somehow affiliated, connected, or associated with each other, and is likely to cause consumers to be confused as to their source, origin, sponsorship, license, approval and/or affiliation.

109.    That because of the similarity in services between the Defendants' business and the Plaintiff's business; because of the similar marketing techniques utilized by the Plaintiff and Defendants; because of the similar territories where such bail bonding services are being offered by the parties hereto; and because the Defendants have improperly and intentionally infringed on Plaintiff's marks, as aforesaid, in conducting and promoting their commercial business, the likelihood of confusion,

ROBBINS & REYNOLDS, P.A., SUITE 412, 9200 SOUTH DADELAND BOULEVARD, MIAMI, FLORIDA 33156 · (305) 670-8002

mistaken belief, and imparting consumers with the misleading impression that they are dealing with the Plaintiff's bail bonding company is great.

110. Defendants use of the Plaintiff's trademark has diluted, damaged, blurred and tarnished the distinctive quality and value of Plaintiff's marks, and they continue to so with impunity.

111. The acts of Defendants were and are intended to trade on the Plaintiff's reputation and to divert potential consumers away from the Plaintiff, and instead to lure them to the Defendants' website and offices by taking advantage of the Plaintiff's trademark, business reputation, goodwill and its well established name. In doing so, the Defendants have embarked on a scheme by engaging in a deliberate course of deception and unfair competition, to the detriment of the Plaintiff.

112. Plaintiff has been and will continue to be irreparably injured and damaged by Defendants' acts of trademark infringement and unfair competition.

113. As a direct and proximate result of the Defendants actions as aforesaid, the Plaintiff and its business has suffered and will continue to suffer unquantifiable monetary damages, and impairment of its name, reputation and goodwill, and the Defendants have been unjustly enriched thereby, for which there is no adequate remedy at law.

114. That the unauthorized acts of the Defendants are continuing to cause the Plaintiff damages, and are likely causing the public to believe that the Defendants are somehow affiliated or associated with, licensed or sponsored by the Plaintiff, causing confusion among consumers, and the Plaintiff seeks to permanently enjoin the Defendants from further using, promoting or advertising their domain name which is

confusingly similar to the Plaintiff's protected trademark.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, AAA BAIL YES BONDING AGENCIES, INC., prays:

(1)    That the Defendants, and each of them, and their partners, employees, agents, representatives, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or in participation with them, cease and desist, and be permanently enjoined from:

(a) Using the Plaintiff's trademark BAIL YES, their trade name BAIL BONDS YES, and/or any other derivative name, mark, or designation, including "BROWARD BAILYES.COM", or any variation of said trademark in connection with the services offered by the Plaintiff in any way;

(b) Registering, owning, selling, trafficking, benefiting from or using for any purpose, any domain names containing the Plaintiff's trademark, tradename or confusingly similar variations thereof;

(c) Representing in any manner or by any method whatsoever, directly or indirectly, that the Defendants' services are sponsored, approved, or authorized by, or originated from, the Plaintiff, and otherwise preventing the Defendants from taking any action likely to mislead the public, or to cause confusion, mistake, or deception as to the origin, approval, sponsorship or affiliation of the Defendants' services, or taking any action that even indirectly suggests that Plaintiff endorses or condones the services offered by the Defendants;

(d) Infringing or diluting the distinctive quality of the Plaintiff's trademark or

ROBBINS & REYNOLDS, P.A., SUITE 412, 9200 SOUTH DADELAND BOULEVARD, MIAMI, FLORIDA 33156 • (305) 670-8002

any derivative thereof;

(e) Using, copying or otherwise exploiting Plaintiff's trademark or any derivative thereof, or any material or content from the Plaintiff's website;

(f) Unfairly competing with the Plaintiff in any manner.

(2) That the Defendants be permanently enjoined from promoting, marketing, licensing, or otherwise displaying the Plaintiff's trademark or any derivative thereof, or displaying any material from the Plaintiff's websites, without the express consent of the Plaintiff;

(3) That the Defendants be required to account for, and identify, all transactions involving services that infringe the Plaintiff's trademark;

(4) That the Defendants and all those in privity with the Defendants, past or present, be required to account for all electronically stored material (ESM) relating to bail bond transactions, including but not limited to all emails, website traffic statements, and website server logs of the Defendants' infringing domain and website.

(5) That the Defendants be required to account for all bail bond transactions, including surety bond reports, since the beginning of their infringement activities.

(6) That the Defendants be required to account for, and identify, all registered owners of telephone numbers listed on the infringing website.

(7) That the Defendants be required to account for, and identify, all domain names registered to or used by the Defendants that contain the Plaintiff's trademark or derivative mark, or any other mark that is confusingly similar thereto.

(8) That the Defendants, and all those in privity with the Defendants, past or present, be required to surrender and deliver up to Plaintiff for destruction all products,

Page 28 of 30

containers, packages, labels, literature, catalogs, signs, advertising material, electronic stored material, and the like bearing the Plaintiff's trademark or derivative mark, or any other mark that is confusingly similar thereto, together with all means of reproducing same.

(9)     That Defendants be required to transfer the infringing domain name ""www.BrowardBailYes.com" including that ownership thereof, over to the Plaintiff;

(10)     That the Defendants be required to remove from the Internet any and all instances of advertising that use Plaintiff's trademark or any derivative thereof, in order to promote Defendants' services; and forfeit and transfer all rights in their confusingly similar domain name to the Plaintiff;

(11)     That the Court declare that the Defendants' acts as alleged herein constitute deceptive and unfair trade practices;

(12)     That the Defendants, and each of them, and all those in privity with the Defendants, past or present, be required to produce an accounting of the gains realized by the Defendants from their wrongful acts, and to pay over to Plaintiff monetary damages sustained by Plaintiff for each violation and cause of action, and the profits realized by the Defendants and their sureties by reason of their unlawful acts as herein alleged, and that the amount of recovery be increased as provided by the law;

(13)     That Plaintiff be awarded corrective advertising damages of more than $100,000.00;

(14)     That Plaintiff be awarded up to $200,000.00 in statutory damages per counterfeit mark as the Court considers just, pursuant to 15 U.S.C. §1117(c);

(15)     That the foregoing statutory damages awards be trebled if the Court finds

that the Defendants' infringement consists of intentionally using Plaintiff's mark, knowing such mark infringes upon the Plaintiff's trademark rights, in connection with the offering for sale of the Defendant's services, pursuant to 15 U.S.C. §1117(b);

(16)   If the Court finds that the use of the counterfeit mark was willful, that the Plaintiff be awarded up to $2,000,000.00 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just, under 15 U.S.C. §1117(c).

(17)   That Plaintiff be awarded up to $100,000.00 in statutory damages under 15 U.S.C. 1117 (d) per domain name, as the Court considers just.

(18)   That Plaintiff be awarded its reasonable costs and attorney's fees;

(19)   That Plaintiff be awarded statutory, compensatory, consequential and punitive damages; and prejudgment interest thereon, and

(20)   That the Court grant such other and further relief as the Court may deem equitable and appropriate.

Dated: January __3rd__, 2013                    Respectfully submitted,

Robert Robbins, Esq.
Florida Bar No.: 183666
9200 S. Dadeland Blvd. Suite 412
Miami Florida 33156
Telephone- (305) 670-8002
Fax - (305) 670-8033
rar@robbinsreynolds.com